# Grove's Appeal.

1. Where land charged with a dower interest is sold after the widow's death, under the order of the Orphans' Court, for the payment of the debts of a terre-tenant, the lien of such dower interest is discharged.

2. In the distribution of a fund produced by a sale for the payment of debts, the Orphans' Court has jurisdiction to determine the rights of all claimants thereto.

3. The parties entitled at the widow's death to receive the principal of a dower fund took a bond from the purchaser to secure the same; one of them afterwards assigned to his creditor such interest in the bond as would liquidate any indebtedness due when the bond should be payable, and directed in said assignment that the obligor or whoever might be required to pay the bond should pay such sum to the creditor or his assigns. *Held*, that this instrument operated as an absolute assignment

of such an amount out of his interest in the dower fund; and that, after a sale of the land under the Orphans' Court for the payment of the debts of a subsequent terre-tenant, the administratrix of the creditor was entitled to share in the fund.

May 11th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and GREEN, JJ. STERRETT and CLARK, JJ., absent.

APPEAL from the Orphans' Court of *Cumberland county :* Of July Term 1883, No. 93.

Appeal of E. A. Grove, administrator of the estate of H. H. Grove, deceased, from the decree of the Orphans' Court of Cumberland county, making distribution of the proceeds of sale of real estate of P. H. Long, deceased, sold by order of said court for the payment of debts.

From the report of the Auditor (John R. Miller, Esq.) appointed to report distribution of the fund in court, produced by the sale of the real estate of P. H. Long, deceased, for the payment of his debts, the following facts appeared : On April 4th 1859, H. H. Grove (the appellant's intestate), and Susan Catharine Ulrich, his sister, being then the owners of a tract of land situate in Cumberland county, conveyed the same to David H. Voglesong, subject to the dower right, amounting to $3,350.62, of their mother Catharine Ulrich, the interest thereof to be paid to her during her life, and the principal at her death to said H. H. Grove and Susan Catharine Ulrich. In addition to the reservation of this sum in the deed to him, Voglesong executed on April 25th 1859, a bond to H. H. Grove and Susan Catharine Ulrich in the penal sum of $6,701.24, conditioned as follows :

" The condition of this obligation is such, that if the above bounden David H. Voglesong, his heirs, executors, administrators or any of them, shall and do well and truly pay or cause to be paid unto the above named Henry H. Grove and Susan Catharine Ulrich (in equal parts), their certain attorneys, executors, administrators or assigns, the just sum of $3,350.62 at the death of Mrs. Catharine Grove, widow of the said Henry Grove, deceased (the same being part of the purchase money for certain real estate purchased from the said Henry H. Grove and Susan Catharine Ulrich as heirs at law of said Henry Grove, deceased), being the same as charged in the deed, without any fraud or further delay, then the above obligation to be void, or else to be and remain in full force and virtue."

Upon May 13th 1859, H. H. Grove executed the following assignment to Rev. John Ulrich :

" WHEREAS, Rev. John Ulrich, of Carlisle, Pa., holds certain promissory notes against me, upon which, after discounting credits, there is an indebtedness of $1,083.40 ; and whereas

. [Grove's Appeal.]

it is the object of this instrument to secure the same by an assignment of my interest in a bond from David H. Voglesong to myself and Susannah Catharine Ulrich, my sister, to the extent of any indebtedness that may exist at the time of the decease of my mother, Mrs. Catharine Grove, at which time said bond is payable. Now, in consideration of the premises, I hereby assign such an amount in said bond as will liquidate any indebtedness that may exist when the said bond is payable, and direct that the obligor in the said bond shall pay over, and hereby authorize the said Ulrich, his executors, administrators and assignees, to receive from said Voglesong, or whosoever else may be required or obliged to pay the said bond, such sum as may be agreed or ascertained to be due on account of the indebtedness aforesaid."

. A portion of the premises were sold by Voglesong to P. H. Long, subject to the payment of $1,800, the apportioned amount of the said dower fund. Long died June 5th 1877, and his real estate was sold by order of court for the payment of his debts September 17th 1879. Mrs. Catharine Grove died. October 24th 1877.

Before the auditor, Mrs. Susan Catharine Ulrich claimed $120.69 in her own behalf from the fund, having already re-received $1,558.62 on account, and her claim was admitted to that extent. She also, as executrix of John Ulrich, deceased, claimed from the balance of the fund the sum of $1,083.57, with interest from 1859, by virtue of the above assignment—the amount of this indebtedness of H. H. Grove to John Ulrich, thereby secured, being much greater than said balance.

Upon this question the auditor reported as follows:

"It is claimed that the assignment was only a collateral security for any debt of H. H. Grove which might exist at the death of Catharine Grove, and that there is no evidence of any debt then existing, that the notes are barred by the statute of limitation, and that Grove's administrator is the proper person to receive the fund for distribution, excepting the $120.69 tendered to Mrs. Ulrich. If the assignment was only as collateral security, I do not think the statute of limitations could be set up, but that the executrix of Rev. John Ulrich would have the right to receive whatever had not been paid prior to the decease of Catharine Grove. The assignment is in effect also an agreement to pay at the death of Mrs. Grove whatever should be due to Ulrich and the statute would not commence to run until the happening of that event. The case of Acheson v. Shenk, 2 Legal Gazette 361, has been cited in support of this position: 'Where a judgment bond is held as collateral security for advances the statute cannot be pleaded against such debt.'

" On the back of the notes is this entry, ' Settled by a bond, 13th May 1859, and recorded.'    But the assignment sets out that ' its object is to secure the indebtedness of $1,083.57 by an assignment of my interest in a bond.'    It authorizes the said Ulrich, his executrix, administrators and assigns to receive from Voglesong or whoever else may be required or obliged to pay ' said bond, such sums as may be agreed or ascertained to be due on account of the indebtedness aforesaid.'

" There can be no doubt that the intention of the parties was not that which took the assignment merely as a collateral and that the dower fund would have to go to Grove's administrator and the claim made against his estate, or his representatives, but it provides that whatever is owing shall be paid to Ulrich, his executors, &c.    The amount due at the assignment was fixed at $1,083.57.    There is no pretence of any payment, and it seems that the debt due is established.

" It is urged that it was not the bond that was assigned, but there can be no doubt that it was the intention of Grove to assign his interest in the dower fund, payable at the death of his mother, and this included the reservation in the deed—the assignment after the requisite proof was recorded, as shown by the testimony.

" Again, the bond of Voglesong was in possession of Mrs. Ulrich, was produced by her, has on it the entry that ' so much of H. H. Grove's interest in the bond is assigned to Rev. John Ulrich as to secure the payment of $1,083.57, at present due him by said Grove, &c.'    As in the assignment, there is nothing said about collateral security, but in it is a transfer of his interest in the bond to a certain extent.

" It appears also that H. H. Grove was one of the appraisers of the estate of John Ulrich, and that he appraised this transfer of the dower as part of the assets of Ulrich's estate.    This inventory cannot be found on file. search having been made by the register and by the auditor ; the records show the date of its filing, but there is no record showing the items it contained.    There is testimony as to its contents which clearly establishes that it contained the item referred to and that H. H. Grove was one of the appraisers.

All these matters show that the transfer was intended to be an absolute transfer of enough of the interest of H. H. Grove in the dower fund to pay the indebtedness to Ulrich at the time of Mrs. Grove's decease, and that Ulrich's executor has a right to receive it from whomsoever might be obliged to pay it, and that the amount of debt on the 13th day of May 1859, was $1,083.57, and that there is no evidence that any portion of this sum has been paid.    It amounted on April 1st 1880, to $2,440.79—much more than Grove's interest in the dower fund.    We have,

therefore, concluded to sustain the exception and distribute the fund in accordance with the opinions above expressed."

Exceptions filed to this report by E. A. Grove, administrator of H. H. Grove, deceased, were overruled by the court and the auditor's report confirmed, in an opinion by Rowe, P. J., whereupon E. A. Grove, administrator, took this appeal, assigning for error the dismissal of said exceptions.

*S. Hepburn* (with him *S. Hepburn, Jr.*), for appellant.— The contest here could not be settled by an auditor's distributing the estate of P. H. Long, as the liquidation of the claim could only be settled in a suit between the representatives of Grove and Ulrich.   This is a collateral matter, and cannot be adjudicated in the Orphans' Court : Landis' Estate 2 Phila. 217 ; Campbell's Estate, 9 Phila. 346.   The jurisdiction of the Orphans' Court is limited to claims against the decedent's estate : Carter's Appeal, 10 Barr 144.   The very fact that evidence must be produced to establish the right of a third party to the share of a distributee of an estate takes the case out of the jurisdiction of the Orphans' Court:   Carter's Appeal, supra ; Wickersham's Appeal, 14 P. F. S. 67.

*W. Trickett* and *W. F. Sadler*, for appellees.—The charge in favor of the widow was discharged by the Orphans' Court sale : Riddle's Appeal, 1 Wright 177 ; Bailey *v.* Commonwealth, 5 Wright 473 ; Hillbish's Appeal, 8 Norris 490 ; Wallace's Estate, 9 P. F. Smith 401.   Distribution made by the Orphans' Court necessarily includes the power and the duty to ascertain the persons to whom distribution is to be made ; where the share of one who is apparently entitled is claimed by another, such claim must be established in the proceedings for distribution : McGettrick's Appeal, 2 Out. 9 ; Dundas's Appeal, 23 P. F. S. 474; Lex's Appeal, 1 Out. 289 ; Williamson's Appeal, 13 Norris 231 ; Otterson *v.* Gallagher, 7 Norris 355. The statute of limitations did not operate as a bar : McCandless' Estate, 11 P. F. Smith 9 ; Leasure *v.* Mahoning, 8 Watts 551 ; Lyon *v.* Huntingdon Bank, 12 S. & R. 61 ; Hanna *v.* Holton, 28 P. F. Smith 334; Ins. Co. *v.* Smith, 1 Jones 120.

The opinion of the court was delivered May 21st 1883.

Per Curiam.   Notwithstanding the earnest and zealous argument of the counsel for the appellant, we are unable to find any error in this decree.   The widow having died before the sale was made under order of the Orphans' Court, the lien charged on the land in her favor, was divested by the sale.   On the Orphans' Court the duty then rested to distribute the fund produced thereby.   This necessarily authorized it to inquire into and determine all questions in the line of distribution.   The

[Wright v. Keyes.]

right of claimants to any portion of the fund is directly within the scope of the inquiry and of the adjudication. The sum in controversy was correctly decreed to the appellee.

Decree affirmed and appeal dismissed at the costs of the appellant.